IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:23-cv-00215-SKC-NRN

CARLOS ALBERTO CORTEZ RODRIGUEZ,

     Plaintiff,

v.

UR M JADDOU, Director, United States Citizenship and Immigration Services,
ANDREW LAMBRECHT, USCIS Filed Office Director, Colorado, and
ALEJANDRO MAYORKAS, Secretary of Homeland Security,

     Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR REMAND AND ADMINISTRATIVE CLOSURE (DKT. 13) AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY (DKT. 20)

---

This dispute centers on the timeliness of Defendant United States Citizenship and Immigration Services' (USCIS) decision (or lack thereof) on Plaintiff Carlos Alberto Cortez Rodriguez's petition for naturalization. This Order addresses Defendants' Motion for Remand and Administrative Closure (Motion). Dkt. 13. Plaintiff filed an Objection (Dkt. 17), and Defendants filed a Reply (Dkt. 19).

In addition, Plaintiff filed a Motion for Leave to File a Sur-Reply in Response to Defendant's [sic] Reply (Motion for Leave) (Dkt. 20), to which Defendants filed their Response (Dkt. 21). Plaintiff did not file a reply. The Court has reviewed the Motion

and the Motion for Leave, the related briefing, the docket, and the relevant law. No hearing is necessary. For the following reasons, the Motion is granted and the Motion for Leave is denied.

## BACKGROUND

Plaintiff filed a petition with USCIS for naturalization to become a United States citizen on January 31, 2022. Dkt. 1, ¶1. The last action USCIS took on his petition was on August 17, 2022, when it interviewed him. *Id.* at ¶5; Dkt. 13, p.2. At that time, he passed the required English language and civics tests to become a naturalized citizen. Dkt. 1, ¶¶5, 11. According to Plaintiff, USCIS had also determined he "has no criminal history that impedes his ability to naturalize[,]" "no physical absences from the United States that prohibit his ability to naturalize[,]" and "[n]o security delay exists in [Plaintiff's] case." *Id.* at ¶¶12-14.

USCIS has not reexamined Plaintiff's petition through a second interview. *Id.* at ¶16. Nor has it issued a decision on his petition. *Id.* at ¶15; Dkt. 13, p.2. Rather, USCIS contends it has "identified an outstanding eligibility concern regarding Plaintiff's status as a lawful permanent resident, which must be resolved through a follow-up interview . . . ." Dkt. 13, p.2. According to USCIS, its "records reflect that Plaintiff submitted a prior immigration application in 1995, in which he disclosed potentially disqualifying information." *Id.* Plaintiff's 1995 application was one for asylum. Dkt. 17, ECF p.2. USCIS explains it never resolved Plaintiff's 1995 asylum application because Plaintiff withdrew it. Dkt. 13, p.3. Plaintiff contends he withdrew

2

it in 2005 after it had been pending for approximately 10 years, and he had already obtained lawful permanent resident status in 2004 based on an approved family-based application by his father. *Id.*; Dkt.17, ECF p.1. But in his 2001 application for lawful permanent resident status, USCIS argues Plaintiff failed to disclose the potentially disqualifying information from his 1995 application. Dkt. 13, p.3. And it contends it did not evaluate that information because "[i]n 2004, prior to receiving his residency status, Plaintiff sought to withdraw his 1995 asylum application." Dkt. 19, p.3.

Plaintiff filed his first petition for naturalization in 2017. Dkt. 17, ECF p.2. USCIS interviewed him on August 5, 2019. *Id.*; Dkt. 19, p.3. At that interview, "the USCIS officer asked two questions regarding the potentially disqualifying information disclosed on Plaintiff's 1995 asylum application, but the officer did not have sufficient time to fully explore the issue." Dkt. 19, p.3. USCIS sent Plaintiff notice of a second interview, which Plaintiff states he did not receive, and Plaintiff failed to appear for the interview. Dkt. 17, ECF p.2; Dkt. 19, p.3. USCIS avers it never received any change of address from Plaintiff prior to its issuing the second interview notice. Dkt. 19, p.4.

USCIS denied Plaintiff's first naturalization application in 2019 "because he had 'provided relevant information in [his 1995 application] that should have been provided in his [2001 application for lawful permanent resident status.]'" Dkt. 17, ECF p.3 (quoting Dkt. 17-2, p.2 "2019 Notice of Decision"); Dkt. 19, p.3. That denial

also explained that Plaintiff had failed to appear for the second interview. Dkt. 17-2, p.2.

Plaintiff then reapplied for naturalization in 2022, which is the application at issue in this case. Dkt. 19, ECF p.3. At his interview with USCIS, Plaintiff states the USCIS officer did not ask him any questions about his 1995 asylum application. *Id.* Nor did USCIS issue a "Request for Evidence" or ask for a second interview. *Id.* USCIS responds by explaining "the interviewing officer received this case without time to prepare, as the officer scheduled to conduct Plaintiff's first interview was unexpectedly absent from work on the day of the interview." Dkt. 19, p.4. Nevertheless, it contends the interviewing officer "asked two general questions regarding the potentially disqualifying information disclosed on Plaintiff's 1995 asylum application, but the officer did not have sufficient time to fully explore the specific information disclosed by Plaintiff in 1995." *Id.* It then states the officer "immediately noted the need for follow-up questioning," but also concedes it "did not schedule the second interview within 120 days of the first interview." *Id.*

Plaintiff filed his Complaint on January 25, 2023, seeking judicial review of his application under 8 U.S.C. § 1447(b). Dkt. 1, ECF p.5. USCIS then filed its Motion arguing the Court should remand the matter so USCIS can "resolve this issue through a follow-up interview with Plaintiff, which USCIS can schedule within 60 days following remand." Dkt. 13, p.2.

ANALYSIS

Defendants argue for remand because (1) remand will result in no prejudice to Plaintiff, (2) USCIS is in the best position to gather evidence and utilize its specialized knowledge, (3) no protracted agency delay has occurred (nor any unnecessary delay), and (4) even after remand, Plaintiff can still seek judicial intervention, assuming an adverse decision. Dkt. 13, pp.3-6. Plaintiff contends Defendants have failed to explain why remand is appropriate. Dkt. 17, ECF pp.3-4. He argues USCIS has unnecessarily delayed his naturalization petition because it has possessed Plaintiff's asylum application for 28 years and has still failed to resolve its concerns. *Id.* Plaintiff ultimately argues a deadline is a deadline and USCIS failed to meet its 120-day statutory deadline. *Id.* He further argues USCIS is not in the best position to gather evidence because civil discovery is a better option. *Id.* at p.4. Finally, he claims remand would result in additional costs and delays for him and would cause him prejudice. *Id.* at pp.4-5. Before addressing the Motion, however, the Court turns first to the Motion for Leave.

**1.      Motion for Leave to File a Sur-Reply**

After Defendants filed their Reply (Dkt. 19), Plaintiff filed his opposed Motion for Leave seeking to file a sur-reply and arguing Defendants' Reply "made new arguments that USCIS' failure to timely adjudicate [Plaintiff's] naturalization application was solely the fault of the Plaintiff, which obfuscates their own failure to comply with the law and USCIS policy, which are central to the [Motion]." Dkt. 20,

5

ECF p.2. After setting forth the standard for considering a motion for leave to file a sur-reply, the Motion for Leave then states, in its entirety:

> Petitioners [sic] satisfy the standard for a sur-reply in this case. In their Reply (ECF 19) the Defendants made new arguments regarding the culpability of the long delays in USCIS obtaining information from Cortez Rodriguez. Defendants also fail to acknowledge USCIS' multiple failures to abide by the law and agency policy which has led to this action and should inform this Court's decision on the pending motion. Finally, Defendants make a series of inaccurate factual assertions which Cortez Rodriguez seeks to address.

*Id.* at ECF p.3.

Defendants contests Plaintiff's assertion that a sur-reply is warranted. Dkt. 20. They contend their Reply did not introduce new arguments and any factual assertions were in response to Plaintiff's Response. *Id.* at pp.2-6. They allege it is Plaintiff who is trying to introduce new arguments, and they seek leave to file a responsive brief to the proposed sur-reply if the Court were to grant the Motion for Leave. *Id.* at pp.6-7.

The Court is not persuaded by Plaintiff's argument. As the parties acknowledge, neither the Federal Rules of Civil Procedure nor the Local Rules of Practice anticipate the filing of a sur-reply. Dkt. 20, ECF p.2; Dkt. 21, pp.1-2; *see also Pirnie v Key Energy Servs., LLC*, No. 08-cv-01256-CMA-KMT, 2009 WL 1386997, at *1 (D. Colo. May 15, 2009). And the burden is on the movant to demonstrate that a sur-reply is warranted. *See Pirnie*, 2009 WL 1386997, at *1 ("Plaintiffs did not show that Defendant had presented new material in the reply brief that it had not included

6

in the original [motion].").

Here, Plaintiff has not specified what he believes are new arguments or what the alleged inaccurate factual assertions are that Defendants included in their Response. *See* Dkt. 19, ECF p.3. Regardless, the Court is more than capable of ignoring any improperly raised new arguments or new factual assertions. The Court therefore denies the Motion for Leave.

## 2.    Motion for Remand

### a.    The 120-day Period under 8 U.S.C. § 1447

Before a person may become a naturalized citizen of the United States, they must apply for citizenship and undergo a personal investigation conducted by a designee of the Attorney General. 8 U.S.C. § 1446. The investigation includes an examination of the applicant by the designee. *Id.* at § 1446(b). The designee then must either grant or deny the application (providing the reasons in support of the decision) within 120 days from the date of the examination. *Id.* at § 1447(b). "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." *Id.* The district court then "has jurisdiction over the matter and may either determine the matter or remand" it with instructions. *Id.* The purpose of § 1447(b) is "to reduce the waiting time for naturalization applicants." *United States v. Hovsepian*, 359 F.3d 1144, 1163 (9th Cir. 2004) ((citing H.R. Rep. No.

7

101–187, at 8 (1985); 135 Cong. Rec. H4539–02, H4542 (1982) (statement of Rep. Morrison)).

### b.    USCIS's Delay

Plaintiff's examination occurred on August 17, 2022. The Agency, therefore, was required to make its determination on his application no later than December 15, 2022. When Plaintiff filed this case, the 120-day period had lapsed by 41 days.

Defendants argue "[m]ost courts remand matters back to USCIS with instructions, recognizing the agency's expertise in immigration matters, as the USCIS is better equipped to handle these cases and has more expertise than district courts in adjudicating applications." Dkt. 13, pp.3-4 (quoting *Wloch v. Jaddou*, No. 22-cv-00495-NYW, 2022 WL 16640782, at *2 (D. Colo. Oct. 24, 2022)). The Court is aware that most courts who choose remand have relied on this rationale. *See, e.g., Israileva v. Chertoff*, No. 8:07-cv-21-T-27MSS, 2008 WL 1766663, at *1 (M.D. Fla. Apr. 17, 2008) ("Ordinarily, with respect to immigration matters, 'a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.'") (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)); *Sallam v. Mukasey*, No. 07-11380-RWZ, 2008 WL 687409, at *1 (D. Mass. Mar. 5, 2008) (remanding for resolution within 30 days, and noting that further hearing before immigration officer would develop the administrative record); *Hussain v. Chertoff*, 486 F. Supp. 2d 196, 200 (D. Mass. 2007) (noting that "[t]he court would generally prefer that USCIS, the expert agency charged with the primary responsibility, decide the merits of an

application for naturalization," but adjudicating case on the merits where government no longer sought remand); *Farooq v. Hansen*, No. 1:07 CV 0946, 2007 WL 2177890, at \*4 (N.D. Ohio July 27, 2007) (noting that "an order of remand comports with Congressional intent that CIS make the initial determinations regarding naturalization applications"); *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 844-45 (E.D. Mich. 2006) (returning application to USCIS for resolution "comports with the 'ordinary remand' rule, under which the courts generally should defer to agencies that bear the statutory obligation to make the initial determination on particular matters within their presumed expertise and delegated authority").

The *Wloch* case cited by Defendants suggest the same. *Wloch*, 2022 WL 16640782, at \*1, 4-5 (remanding case where USCIS had delayed 284 days). There, USCIS was investigating the plaintiff's marriage for fraud and by which she had been granted legal permanent resident status in association with her naturalization petition. *Id.* at \*4. Similarly, in *Moreno v. Nielson*, No. 17-cv-3146-WJM-MJW, 2018 WL 11446891 (D. Colo. May 30, 2018), the agency took no discernable action on the plaintiff's application for over a year. After the plaintiff initiated his case in this district, the agency explained that the delay was due to recent receipt of new information concerning plaintiff's criminal history and a limited diplomatic relationship with the plaintiff's country of origin. *Id.* at \*4. In deciding to remand the cases, both courts concluded that USCIS was in a better position to evaluate the information. *Id.*; *Wloch*, 2022 WL 16640782, at \*4.

9

In light of the weight of authority which bends toward remand, "the instances when a court should determine itself the matter of an applicant's naturalization should be reserved 'for those rare circumstances in which CIS *unnecessarily* delays the adjudication of an application.'" *Borski v. Lynch*, No. 16-CV-00924-RM, 2017 WL 1153997, at *5 (D. Colo. Mar. 27, 2017) (quoting *Ajlani v. Chertoff*, 545 F.3d 229, 240 (2d Cir. 2008)) (emphasis in original). The Court finds that this case does not present that rare circumstance and cannot conclude that the extraordinary circumstances requiring judicial intervention exist at this time.

Plaintiff contends USCIS has had ample opportunity—28 years—to address its concerns about the information disclosed in his asylum application. Dkt. 17, ECF p.5. But as postured here, USCIS has exceeded the statutory 120-day period by only 41 days.[1] On the record before it, the delay is not so excessive nor unnecessary as to weigh in favor of the Court retaining this matter. *Compare Wloch*, 2022 WL 16640782, at *1, 4-5, *with Kim v. McAleenan*, No. 19-cv-01212-SKC, 2020 WL 1026494, at *2-3, 5 (D. Colo. Mar. 3, 2020) (denying motion to remand when USCIS delayed three years beyond the 120-day statutory deadline).

The Court further believes USCIS is in a better position to gather and

---

[1] The Court also notes, after USCIS denied his 2017 naturalization petition in 2019, Plaintiff apparently did not appeal that decision. He instead re-applied for naturalization in 2022. The almost two-and-one-half years' lapse between Plaintiff's failure to appeal the denial of his 2017 application and his second 2022 naturalization application undercuts his current claim of delay.

10

consider evidence relevant to Plaintiff's naturalization petition, at least on the current record. *See Moreno*, 2018 WL 11446891, at *3 ("The Court finds it is in the interest of judicial economy to allow the agency with subject matter expertise in immigration to evaluate Plaintiff's application in the first instance."). While Plaintiff argues USCIS has had at least some of the potentially concerning information for 28 years and could have investigated further, Defendants explain USCIS began investigating during Plaintiff's 2017 naturalization but did not complete its investigation because Plaintiff failed to appear for a second interview. Defendants now represent to the Court that USCIS is prepared to schedule a follow-up interview within 60 days with Plaintiff to explore the potentially disqualifying information. The Court believes in this instance that USCIS can more effectively investigate its concerns since it has represented to the Court that it needs only to conduct a follow-up interview with Plaintiff to resolve any issues.

Plaintiff also argues he will have additional costs and delays, and ultimately be prejudiced, if the Court remands to USCIS. But Plaintiff's argument is unavailing. He essentially argues, if the Court remands to USCIS, and if USCIS denies his naturalization petition, he will then have to exhaust his administrative remedies before he can request review by the Court. Dkt. 17, ECF pp.5-6. His argument, however, assumes a negative outcome to himself. And, regardless, that is the naturalization system within which he must work. *Moreno*, 2018 WL 11446891, at *3 ("To the extent that USCIS exhibits actual bias in its decision, erroneously

interprets evidence, or fails to adhere to federal regulations in making a determination, Plaintiff may seek appropriate administrative and judicial remedies in the future.").

The Court, therefore, grants the Motion, orders remand to USCIS with instructions, and administratively closes this case subject to reopening for good cause. *See* 8 U.S.C. § 1447(b); *Wloch*, 2022 WL 16640782, at *4 (ordering remand and setting deadlines by which USCIS must act).

*　　*　　*

For the reasons shared above, Defendants' Motion is GRANTED, and Plaintiff's Motion for Leave is DENIED. The Court ORDERS:

1) This matter is remanded to USCIS;

2) USCIS and Plaintiff shall conduct a follow-up interview no later than November 25, 2024;

3) Defendants and Plaintiff shall file a Joint Status Report updating the Court on the status of its decision on Plaintiff's application no later than 30 days after the follow-up interview has taken place;

4) USCIS shall issue a final agency decision on Plaintiff's application no later than January 24, 2025;

5) Defendants and Plaintiff shall file a Notice within 10 days of USCIS's final agency decision alerting the Court that USCIS has rendered a final agency decisions; and

6) The Clerk of Court shall administratively close this matter.

No extensions of these deadlines will be granted absent extraordinary circumstances, and Defendants are advised that agency backlog does not constitute an extraordinary circumstance under the circumstances of this case.

DATED: September 26, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge